(No. 75-CV-14—

CELIA SPIVAK, on behalf of LEWIS B. SPIVAK, Deceased, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed April 23, 1975.*

CELIA SPIVAK, Claimant, pro se.

WILLIAM J. SCOTT, Attorney General, for Respondent.

PER CURIAM.

This claim arises out of a criminal offense that occurred on June 20, 1974, at 3801 West Cermak Road,

Chicago, Illinois. Celia Spivak, wife of the deceased victim, seeks payment of compensation pursuant to the provisions of the "Crime Victims Compensation Act," *Ill. Rev. Stat., 1973, Ch. 70, Sec. 71, et seq.* (hereafter referred to as "The Act.")

This Court has carefully considered the application for benefits submitted on the form prescribed and furnished by the Court, and a report of the Attorney General of the State of Illinois which substantiates matters set forth in the application. Based upon these documents and other evidence submitted before the Court, the Court finds:

1. That the claimant's deceased husband, Lewis B. Spivak, age 55, was a victim of a violent crime, as defined in Sec. 2(c) of the Act, to wit:

"Murder," *(Ill. Rev. Stat. 1973, Ch. 38, Sec. 9-1).*

2. That on June 20, 1974, the claimant's husband was found shot and lying on the office floor of the Standard Automotive Warehouse Company building at 3801 West Cermak Road, Chicago, Illinois.

3. That the statements taken by police investigators shortly after the crime was committed present no evidence of any provocation or wrongful act on the part of the decedent.

4. That the victim died on June 20, 1974, as a result of the wounds he received in the shooting of the same day. A further and more detailed summary of the facts and information considered by the Court is contained in the Investigatory Report prepared by the Attorney General. A copy of said report is retained in the Court's file in this matter, and the facts as reported therein are incorporated in this opinion by reference.

894

5. That a Coroner's Inquest upon the body of the victim was held on August 9, 1974. That the verdict of the Coroner's Jury found this incident to have been murder.

6. That the assailant(s) remain unknown at this time, and police investigation into the case still continues.

7. That there is no evidence that the victim and his assailant(s) were related or sharing the same household.

9. That the criminal offense was reported promptly to law enforcement officials, and claimant has fully cooperated with their requests for assistance.

9. That the claimant seeks compensation under the Act for loss of support to herself and her child, Susan, age 16.

10. That at the time of his death, Lewis B. Spivak was 55 years old, and had a life expectancy to age 74.6 according to Vital Statistics of the U.S. 1970, U.S. Department of Health, Education, and Welfare Public Health Service mortality table for the U.S. population. Therefore, we must conclude that the decedent's family has lost his financial support for the remainder of his normal life expectancy, computed to be 19.6 years.

11. That the victim's average monthly earnings for the six months immediately preceding his death were $2,650.00, but earnings of only $500.00 per month can be considered as the basis for determining loss of support, pursuant to the following provision in Sec. 4 of the Act:

" . . . loss of support shall be determined on the basis of the victim's average monthly earnings for the six months immediately preceding the date of the injury or on $500.00 per month, whichever is less."

12. That, based upon the victim's normal life expectancy of 19.6 years, and taking $500.00 per month as

his average monthly earnings, the loss of support to his family is computed to be an amount far in excess of the $10,000.00 maximum amount that can be awarded as compensation under the Act for any loss resulting from a violent crime.

13. That, in addition to loss of support, the claimant incurred funeral expeneses and numerous coroner's costs which were covered by insurance benefits and other compensation programs, and the gross amount of the pecuniary loss for these items as computed before deductions and setoffs is as follows:

| | |
|---|---|
| Coroner's Reports | $ 22.50 |
| Coroner's Inquest Fee | 30.60 |
| Death Certificates | 13.00 |
| Funeral | 1,797.25 |
| | $1,863.35 |

14. That, in determining the amount of compensation to which an applicant is entitled, Sec. 7(d) of the Act states that this Court—

"(d) shall deduct $200.00 plus the amount of benefits, payments or awards, payable under the 'Workman's Compensation Act,' or from local governmental, State or Federal funds or from any other source, (except annuities, pension plans, Federal social security benefits and the net proceeds of the first ($25,000.00) Twenty-five Thousand Dollars of life insurance that would inure to the benefit of the applicant . . .)."

We interpret the above provision to mean that the benefits received by the victim's family as a result of his death, and deduction of $200.00, shall be deducted from the total loss sustained and not from the $10,000.00 maximum amount payable under the Act. On this point, we are adopting a recent opinion of the Massachusetts Supreme Court on the same point arising under the provisions of an Act identical to ours in all material respects: *Gurley* v. *Commonwealth (1973) 296 N.E. 2d 477.*

15. That, in the claim before us, the benefits received by the claimant, as contemplated by §7(d) of the Act, were shown to be in the total sum of $54,184.87. This amount, plus the statutory deduction of $200.00, having been deducted from the gross amount of loss shown in paragraph 12 and 13, leaves the amount of the actual loss sustained by the claimant and her child far in excess of the $10,000.00 maximum amount that can be awarded under the Act for any loss resulting from a violent crime. Hence, the claimant and her child are entitled to an award in the maximum amount payable under the Act, $10,000.00.

The Court takes notice of the fact that the daughter of the deceased victim, who is named in paragraph 9 of this opinion, was also dependent on Lewis B. Spivak, as was his surviving spouse, Celia Spivak, the claimant, and the mother of the decedent's said child.

Under the circumstances the Court is required to interpret and comply with the following language of the Act found in §8(b):

"(b) If the Court of Claims finds, in the case of an application made by a person dependent for (her) support on a deceased victim, that persons other than the applicant were also dependent on that victim for their support, it (the court) shall also (1) name those persons in its order; (2) state the percentage share of the total compensation award and the dollar amount to which each is entitled, and (3) order that those amounts be paid to those persons directly or, in the case of a minor incompetent, to his (her) guardian or conservator, as the case may be."

To comply strictly with the above legislative directive, it would seem appropriate and reasonable to order the distribution of the $10,000.00 award in accordance with the rule of distribution stated in *§11(1) of the Probate Act.* This rule would allow one-third ($3,333.33) to the victim's surviving spouse, and the remaining two-thirds to the victim's child. This would create a separate estate in the amount of $6,666.66 for Susan Spivak, age 16.

However, to make distribution in this matter, we believe would impose an undue hardship on the mother. If the $10,000.00 award were paid to her in a lump sum, she would be holding $6,666.66 in trust for her child. Although she is guardian of her daughter's person, she would have no power to administer her child's estate, nor use her child's funds unless she is duly appointed guardian of the daughter's estate as provided by law. *Perry* v. *Carmichael* (1880) *95 Ill. 519.* After such appointment she would be required to manage her child's funds frugally under the direction of the appointing Court and present periodic accounts of her guardianship to such court. She would also be responsible for Court costs and any legal expenses required in filing her petition for appointment, oath, surety bonds and accounts.

To obviate the necessity of the claimant being appointed guardian of her daughter's estate and considering all facts in this case, the court believes that the best interest of the victim's family would be served by our ordering that this award be disbursed to the claimant in periodic monthly payments as authorized in §8(a) (4) of the Act. As the natural guardian of her daughter, the mother has a legal obligation to provide for the child's suitable support and education. In fulfilling this obligation, we believe she would necessarily be required to expend the proper amount from each monthly payment received hereunder for the care and nurture of her daughter well as for her own necessities.

It Is Hereby Ordered that the total sum of $10,000.00 be awarded to the claimant and her daughter, collectively, as persons who were all dependent for their support on Lewis B. Spivak, the deceased victim of a violent crime.

It Is Further Ordered that the aforesaid award be

paid to the claimant, Celia Spivak, in twenty (20) equal monthly installments of $500.00 each. The Court directs that said monthly payments shall be made from the Court of Claims Fund insofar as it is legally possible to do so.